664 So.2d 94 (1995)
STATE of Louisiana
v.
Silas JOHNSON.
No. 94-K-1379.
Supreme Court of Louisiana.
November 27, 1995.
Rehearing Denied January 12, 1996.
*96 Richard P. Ieoyoub, Attorney General, Robert "Rick" Bryant, District Attorney, Paul Peter Reggie, and Patricia Head Minaldi, for Applicant.
Ronald F. Ware, for Respondent.
WATSON, Justice.[1]
A jury convicted the defendant, Silas Johnson, of attempted second degree murder, in violation of LSA-R.S. 14:30.1 and 14:27, and aggravated burglary, in violation of LSA-R.S. 14:60. The trial court sentenced Johnson to concurrent sentences of 50 years at hard labor for attempted second degree murder and 30 years at hard labor for aggravated burglary.
The issue is whether a harmless error analysis applies to review of the trial court's erroneous admission of other crimes evidence. We find this type of error to be a "trial error" under the standards enunciated in Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), as acknowledged by this Court in State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, 502 U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991). Louisiana courts must evaluate the prejudicial effect of such errors under the harmless error principles established in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). See La.C.Cr.P. art. 921.

FACTS
The following evidence was adduced at trial. The defendant, Silas Johnson, was married for fifteen years to Grace Johnson. After several separations, the couple divorced on October 28, 1991. Shortly after the divorce, Grace Johnson became engaged to David Corsey. Grace Johnson worked at night. Corsey often came to town on Friday and stayed the weekend at her Westlake, Louisiana, trailer babysitting her three children, Dwana Wilson, Crystal Johnson and Dwayne Johnson.
Grace Johnson testified that after the divorce, the defendant entered her trailer without her permission on two occasions. On Thursday, December 12, 1991, Grace Johnson told the defendant he could not do so anymore. Although the conversation was initially cordial, it turned into an argument during which the defendant told Grace Johnson "ain't no son-of-a-bitch gonna take my kids and my old lady away from me."
On Friday, December 13, 1991, Corsey went to stay at Grace Johnson's trailer with her three children and his two children. Sometime between 10 and 10:30 p.m., before Grace Johnson left for work, she and Corsey saw and heard Silas Johnson's car drive by the trailer. Grace Johnson testified she saw the car back up quickly and leave after the driver could see Corsey's car parked outside the trailer. Grace Johnson warned Corsey to be careful.
Corsey went to sleep in the front bedroom at about 10:30 p.m. Dwana stayed up watching television until midnight or 12:30 a.m. Sixteen-year-old Dwana had told her step-father, the defendant, that she would be out that evening but her plans changed. After locking the doors, Dwana fell asleep on the living room couch. Corsey woke up in pain and realized he was being stabbed. Dwana was awakened by Corsey's screams. She went to that room and turned on the light. She saw her stepfather, Silas Johnson, leaning *97 over Corsey, shoving down on him. Corsey recognized Silas Johnson when the light came on and saw the defendant stab him again in the stomach. Dwana pulled the defendant off Corsey and shoved him through the trailer and out the front door. One of the kitchen knives was later found on the bedroom floor.
After checking on Corsey, Dwana ran to the landlord's trailer to call the police and an ambulance. When she did so, she saw the defendant running to his car. He turned back and looked at Dwana, then continued to his car and drove away. Dwana told the police that Silas Johnson stabbed Corsey.
Corsey was stabbed fifteen times: once in the stomach, four times in the right chest, once in the back, four times in the right forearm, and five times in the right upper arm. The doctor who performed 12 hours of surgery testified Corsey's wounds were life-threatening; he would have died if he had not received prompt medical attention.
At the emergency room prior to surgery, Corsey named Silas Johnson as his attacker. Later, while he was recovering, Corsey picked the defendant's picture out of a photo line-up. Dwana Wilson also picked the defendant's picture out of a photo line-up.
Silas Johnson was arrested and initially charged with attempted first degree murder and aggravated burglary. The murder charge was later reduced to attempted second degree murder. At trial, the state relied on the testimony of Dwana and Corsey to prove the defendant was the attacker. The taped emergency telephone call, in which Dwana identified Silas Johnson as Corsey's attacker, was played for the jury. The state also presented the testimony of Grace Johnson's sister, who related that the defendant threatened both Grace Johnson and David Corsey at the time of his divorce.
In order to refute this evidence, the defendant took the stand. He denied that he stabbed Corsey and testified that at the time of the stabbing he was asleep in his mother's mobile home in Pitkin, Louisiana, approximately 80 miles from Grace Johnson's home in Westlake. The defendant's mother corroborated his alibi.
During cross-examination by the state, the defendant admitted having several prior misdemeanor convictions, including driving while intoxicated, simple battery, criminal damage to property, simple drunkenness, disturbing the peace and resisting an officer. He also acknowledged pleading guilty in 1973 to one count of simple burglary in Allen Parish, Docket No. CR-1192-73. He denied any other convictions for burglary.
After this denial, the state presented a certified copy of court minutes from the 33rd Judicial District Court, Allen Parish, dated September 21, 1973. This document showed the defendant had been charged with six counts of simple burglary and that he had pleaded guilty to five of the charges in Docket Nos. CR-1192-73, CR-1195-73, CR-1197-73, CR-1198-73 and CR-1200-73. The document showed the defendant pleaded not guilty to the charge in Docket No. CR-1201-73.[2]
In spite of this evidence, the defendant steadfastly maintained he had only one prior simple burglary conviction. The state offered the September 21, 1973, court minutes into evidence, along with certified copies of the six bills of information corresponding to the charges reflected in the minutes. Defense counsel did not object to introduction of the court minutes since he believed the entries were admissible under La.C.E. art. 609.1,[3] but did object to introduction of the bills of information.
*98 After the trial court took the matter under advisement, it sustained defense counsel's objection, finding that although the bills of information were within the scope of Article 609.1, they were inadmissible because their prejudicial impact outweighed their probative value. La.C.E. art. 609.1(C)(3). The state filed an emergency writ to the Louisiana Third Circuit Court of Appeal, which reversed the trial court's ruling and allowed introduction of the bills of information into evidence. State v. Johnson, 92-1312 (La.App. 3d Cir., 11/5/92).[4]
Thereafter, the state questioned the defendant extensively about these documents. The prosecutrix asked the defendant to compare the bills of information on each of the six simple burglary charges with the disposition in the court minutes. The prosecutrix mistakenly challenged the defendant to deny that the official court record showed him pleading guilty to each of the six simple burglary charges. The minutes clearly show the defendant pleaded not guilty to Docket No. CR-1201-73. Throughout, the defendant did not waiver, but maintained he pleaded guilty to only one simple burglary charge pursuant to a plea bargain which called for a single conviction and a suspended sentence of three years at hard labor.
After being convicted as charged and sentenced, the defendant appealed claiming the trial court erred in admitting the bills of information into evidence and in imposing an excessive sentence. The court of appeal reversed the conviction and sentence. State v. Johnson, 93-711 (La.App. 3d Cir., 2/2/94); 631 So.2d 658.
First, the court of appeal recognized the minutes showed the defendant pleaded not guilty to the offense charged in Docket No. CR-1201-73; this was not evidence of a prior conviction. Thus, the admission in evidence of the minute entry and corresponding bill of information for that charge constituted inadmissible other crimes evidence beyond the scope of La.C.E. art. 609.1.
Second, the court of appeal examined a set of court minutes dated October 12, 1973, attached to the Presentence Investigation Report which had not been introduced or discussed at trial or sentencing. These October 12, 1973, minutes revealed that on that date, the district court accepted Johnson's guilty plea in CR-1192-73 and sentenced him to a three-year suspended sentence. The other five simple burglary charges were nolle prosequied by the state; Nos. CR-1195-73, CR-1197-73, CR-1198-73, CR-1200-73 and CR-1201-73.[5] The defendant was, therefore, telling the truth when he maintained at trial that he had one prior simple burglary conviction.
The court of appeal concluded, that with the exception of the charge to which the defendant admitted he pleaded guilty, Docket No. CR-1192-73, all other evidence concerning the simple burglary charges was not evidence of prior convictions and was erroneously admitted. The court of appeal held the introduction of the evidence was prejudicial to the substantial rights of the defendant and reversed the convictions and sentences, reasoning:
[g]enerally, evidence of extraneous offenses is inadmissible due to the prejudicial effect upon the accused's constitutional presumption of innocence. State v. Vernon, 385 So.2d 200 (La.1980); State v. *99 Prieur, 277 So.2d 126 (La.1973). The supreme court, in State v. Brown, 428 So.2d 438, 443 (La.1983), noted as to other crimes evidence that, "... the effect on a jury of inadmissible other crimes evidence cannot be determined, and that such evidence is per se prejudicial and a substantial violation of a statutory right."
State v. Johnson, p. 6-7; 631 So.2d at 662.
The state's writ was granted to determine whether harmless error analysis applies when other crimes evidence is improperly admitted. 94-1379 (La. 10/28/94), 644 So.2d 378.

LAW AND DISCUSSION
Other Crimes Evidence
Evidence of other crimes is generally inadmissible in the guilt phase of a criminal trial unless the probative value of the evidence outweighs its prejudicial effect and unless other safeguards are met. State v. Code, 627 So.2d 1373 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); State v. Bourque, 622 So.2d 198 (La.1993); State v. Silguero, 608 So.2d 627 (La.1992). This general rule ensures that a defendant who has committed other crimes will not be convicted of a present offense simply because he is perceived as a "bad person," irrespective of the evidence of his guilt or innocence. A conviction should be based on guilt and not on character. Bourque, 622 So.2d at 233; State v. Hamilton, 478 So.2d 123 (La.1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). One important safeguard is advance notice that such other crimes evidence will be offered. This prevents surprise and allows a defendant an opportunity to prepare a meaningful defense. Bourque, 622 So.2d at 233; Hamilton, 478 So.2d at 129; State v. Prieur, 277 So.2d 126 (La.1973).
There are statutory and jurisprudential exceptions to this exclusionary rule. Code, 627 So.2d at 1381; Silguero, 608 So.2d at 629. In this case, the state relied upon La.C.E. art. 609.1, which allows impeachment of a witness in a criminal case by evidence of prior convictions. If a defendant chooses to testify, this provision authorizes credibility testing with evidence of prior criminal convictions. See State v. Tassin, 536 So.2d 402 (La.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989); State v. Neslo, 433 So.2d 73 (La.1983) (both decided under former LSA-R.S. 15:495[6]). Evidence regarding previous arrests, indictments, prosecutions or other criminal proceedings not resulting in convictions is prohibited.
Although Johnson pleaded guilty to five simple burglary charges on September 21, 1973, those charges were later nolle prosequied by the state on October 12, 1973, pursuant to a plea bargain. The state argues without authority that once the defendant entered a guilty plea, the convictions could not be nolle prosequied. The state may nolle prosequi a case after the verdict has been rendered and before sentencing with the trial court's permission. See State v. Hoyal, 516 So.2d 146 (La.App. 5th Cir.1987) [citing State ex rel. Bier v. Moise, 48 La.Ann. 144, 18 So. 956 (1895); State ex rel. Bier v. Klock, 48 La.Ann. 140, 18 So. 942 (1895); and State ex rel. Butler v. Moise, 48 La.Ann. 109, 18 So. 943 (1895)]; State v. Knight, 526 So.2d 452 (La.App. 5 Cir.1988). See also State v. Perry, 116 La. 231, 40 So. 686 (1906).
Johnson's only conviction for simple burglary was the one charge to which he pleaded guilty. Both the bills of information and the court minutes regarding all other simple burglary charges were not evidence of prior convictions. They were beyond the scope of La.C.E. art. 609.1 and their erroneous admission in evidence constituted inadmissible other crimes evidence.

*100 Harmless Error Analysis

The question is whether a harmless error analysis may be used to review a conviction where inadmissible other crimes evidence is disclosed to the jury. The Louisiana harmless error rule was first codified in 1928 with the enactment of former LSA-R.S. 15:557.[7] This rule limited reversals to cases where the error complained of probably had a substantial effect upon the outcome of the trial. Paul M. Hebert, The Problem of Reversible Error in Louisiana, 6 Tul.L.Rev. 169, 199-200 (1932); Dale E. Bennett, The 1966 Code of Criminal Procedure, 27 La.Law Rev. 175, 230 (1967). See also, La.C.Cr.P. art. 921, Official Revision Comment (c).
In 1966, LSA-R.S. 15:557 was amended and reenacted as La.C.Cr.P. art. 921.[8] Article 921 now provides:
A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.
The history of Louisiana's harmless error rule makes clear that there has been one common directive: appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated. This comports with the general theory that "appeals in criminal cases are not granted merely to test the correctness of the trial court's ruling, but only to rectify injuries caused thereby." State v. Saia, 212 La. 868, 876, 33 So.2d 665, 668 (1947), citing State v. Cullens, 168 La. 976, 123 So. 645, 648 (1929).
This Court adopted the federal test for harmless error announced in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), as a practical guide for determining whether substantial rights of the accused have been violated. See State v. Gibson, 391 So.2d 421 (La.1980). Chapman tests whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24; 87 S.Ct. at 828. An error did not "contribute" to the verdict when the erroneous trial feature is unimportant in relation to everything else the jury considered on the issue. Yates v. Evatt, 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991), overruled as to standard of review for erroneous jury instructions in Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
Chapman was refined in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The Sullivan inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Id., 508 U.S. at ___, 113 S.Ct. at 2081. This Court adopted the Sullivan refinement of Chapman. See State v. Code, 627 So.2d at 1384; State v. Bourque, 622 So.2d at 241 fn. 20.
In Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), a five-person majority of the United States Supreme Court distinguished between "trial errors," which may be reviewed for harmless error, and "structural errors," which defy analysis by harmless error standards.
Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a *101 reasonable doubt. A structural error is one which affects the framework within which the trial proceeds. Id., 499 U.S. at 307-311, 111 S.Ct. at 1264-1265. Structural defects include the complete denial of counsel, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); adjudication by a biased judge, see Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); exclusion of members of defendant's race from a grand jury, see Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); the right to self-representation at trial, see McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); the right to a public trial, see Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); and the right to a jury verdict of guilt beyond a reasonable doubt, see Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). This Court has acknowledged the distinction between trial error and structural error. See State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, 502 U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).
Analysis of the foregoing principles shows that the erroneous introduction of other crimes' evidence is a trial error, i.e., an error which occurs during the case's presentation to the trier of fact, which may be quantitatively assessed in the context of the other evidence. As such, it may be reviewed for harmless error. This conclusion is not barred by consideration of La.C.Cr.P. art. 770, which in pertinent part provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
This Court has previously held that violation of this rule is per se prejudicial and a substantial denial of the defendant's statutory rights, reasoning that the effect on a jury of evidence of inadmissible other crimes evidence cannot be determined. See State v. Brown, 428 So.2d 438 (La.1983). This is so even where a defendant fails to move for a mistrial, as required, as long as an objection is entered. See State v. Duke, 362 So.2d 559 (La.1978); State v. Hamilton, 356 So.2d 1360 (La.1978).
We reject this per se rule as it impacts appellate review. Although Article 770 is couched in mandatory terms, this is a rule for trial procedure. Its operation depends upon motion by the defendant. The defendant may even waive its mandatory mistrial effect by requesting an admonition only. We find instead that the mandatory language of LSA-C.Cr.P. art. 921 provides the proper scope for appellate review; i.e., a judgment or ruling shall not be reversed due to error unless the error affects substantial rights of the accused.[9]
The per se rule was not consistently applied. Our holding is in accord with other cases utilizing a harmless error analysis. State v. Connor, 403 So.2d 678, 680 (La.1981), held improper questioning about defendant's prior arrests "could not have had any effect on the jury's decision." State v. Neslo, 433 So.2d 73 (La.1983), held both improper questioning of the defendant as to the nature of a prior charge and erroneous introduction of a certified copy of his prior conviction which showed his probationary status to be harmless. State v. Tassin, 536 So.2d 402 (La. 1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989), held erroneous admission of the defendant's conviction record which showed probation and plea bargain conditions were not unduly prejudicial in light of the evidence of guilt.
*102 Based on the foregoing, we hold that the introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis. Insofar as State v. Brown, supra, and other cases have held the admission of inadmissible other crimes evidence is per se prejudicial and not subject to harmless error review, they are overruled.
The Court must now decide whether the error was harmless in this case; i.e., whether the verdict actually rendered was surely unattributable to the error. Sullivan, 508 U.S. at ___, 113 S.Ct. at 2081. The state presented the testimony of two eyewitnesses. Corsey saw Johnson when Dwana turned on the light; he saw Johnson stab him in the stomach. Dwana also saw her stepfather when she turned on the light. She had another opportunity to identify him outside the trailer when he turned to look at her. Johnson was well-known to both witnesses; misidentification under these circumstances is unlikely.
The jury also heard testimony about prior threats Johnson made toward both Corsey and Grace Johnson. The defendant was familiar with Grace Johnson's trailer and knew how to enter it. Testimony established Johnson thought both Grace Johnson and Dwana would be absent that evening, leaving Corsey with only the younger children.
The jury heard testimony that the defendant had a long history of criminal activity. The defendant admitted to an extensive list of prior convictions, including multiple DWI convictions. During questioning often solicited by defense counsel, testimony was adduced as to Johnson's serving time in jail. The defendant admitted to one prior conviction for simple burglary.
With this background, it is clear that the erroneous admission of inadmissible evidence showing Johnson previously charged with five counts of simple burglary was harmless error.

CONCLUSION
The erroneous admission of other crimes evidence is a trial error subject to harmless error analysis on appeal. The facts show that, in this case, the error was harmless and the court of appeal erred in reversing the conviction on this issue. The only other issue raised in his appeal, excessive sentence, is without merit.
JUDGMENT OF COURT OF APPEAL REVERSED; RELATOR'S CONVICTION AND SENTENCE ARE AFFIRMED.
CALOGERO, C.J., dissents and will assign reasons.
VICTORY, J., dissents in part and concurs in part with reasons.
VICTORY, Justice, concurring in part and dissenting in part.
I am in general agreement with the majority's conclusion that the introduction of inadmissible other crimes evidence results in a trial error which is subject to the harmless error analysis.
However, I cannot agree that the error in this case was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The weight of the evidence against a defendant does not, in any way, lessen his Constitutional right to a fair trial. The defendant's alibi defense hinged upon his credibility. The state acknowledged the importance of the defendant's credibility in its argument before the trial court on the issue of admissibility of the September 1973 minutes and corresponding bills of information:
MRS. MINALDI: And just for the record, Your Honor, of course the State's position is that this is being introduced on the issue of credibility. Mr. Johnson's credibility is crucial to this proceeding, and the fact that he has denied the fact that he had these burglaries is crucial to his credibility, and that is why the State is seeking writs and asking for a stay of the proceedings during the seeking of emergency writs. (Emphasis added.)
The state's complete destruction of his credibility, and thus his alibi defense, through the use of certified court documents showing five felony burglary convictions that did not exist, in my view prevented the defendant from having a fair trial. By the time the case was submitted for decision, the jury *103 had been erroneously led to believe that the defendant, who was on trial for attempted second degree murder and aggravated burglary, had been previously convicted of five burglaries, had lied about the convictions under oath, and had been caught lying about them in the jury's presence. In fact, the defendant was telling the truth about these nonexistent convictions, but the jury never knew it. Any chance that the jury had of properly weighing the defendant's credibility, and thus his alibi, was destroyed by the prejudice created by this inadmissible evidence.
As the majority points out, prior to today's decision, we have held relatively minor infractions in the area of inadmissible other crimes evidence to be harmless. State v. Connor, 403 So.2d 678 (La.1981); State v. Neslo, 433 So.2d 73 (La.1983); State v. Tassin, 536 So.2d 402 (La.1988), cert. denied, 493 U.S. 874, 110 S.Ct. 205, 107 L.Ed.2d 159 (1989). This case is totally distinguishable. Introducing evidence of five prior felony convictions that do not exist, and then impeaching the defendant with certified court documents when he truthfully denies their existence can not be considered "minor," and should not be deemed to be harmless error.
I also take issue with the majority's finding that the provisions of La.Code Crim.P. art. 770 are not pertinent because the defendant did not move for a mistrial. What the majority fails to consider is that this defendant was precluded from making such a motion because neither his lawyer, nor the trial court were aware that the state's evidence of the five simple burglary convictions was simply erroneous. Although the defendant asked the state to provide a copy of his prior criminal record pre-trial, the record shows the state failed to advise the defendant of the five felony convictions at issue. The first time that defense counsel became aware of the convictions was during the trial. Relying on the certified court records, defense counsel had no reason to suspect that the convictions were subsequently nolle prosequied, and had no basis for objecting to the admissibility of the September 1973 minutes. Because of the exceptional circumstances presented, this Court should excuse defense counsel's failure to move for a mistrial. Cf. State v. Green, 493 So.2d 588 (La.1986); State v. Williamson, 389 So.2d 1328 (La. 1980).
For the reasons stated, I agree with the Louisiana Third Circuit Court of Appeal that the defendant is entitled to a new trial.
NOTES
[1] This case was argued before a panel consisting of Chief Justice Calogero and Justices Marcus, Dennis, Watson, Lemmon, Johnson and Victory, with Justice Kimball not on panel. Justice Dennis has taken office on the United States Court of Appeal for the Fifth Circuit and is no longer a member of this Court. By order dated October 9, 1995, this case was resubmitted on the briefs already filed and the oral arguments already recorded before a panel consisting of Chief Justice Calogero and Justices Marcus, Watson, Lemmon, Kimball, Johnson and Victory.
[2] The court minutes also showed the defendant was charged with simple burglary in CR-1203-73 and CR-1205-73. The defendant pleaded not guilty to both of those charges. There are no corresponding bills of information in the record for these charges.
[3] La.C.E. art. 609.1 provides in pertinent part:

Art. 609.1 Attacking credibility by evidence of conviction of crime in criminal cases
A. General Criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
[4] The court of appeal granted writs and made its ruling peremptory with the following language: "We reverse, vacate and set aside the ruling of the trial court finding the trial court erred in not admitting the bills of information into evidence." One judge dissented, finding no error in the trial court's ruling.
[5] The charges in CR-1203-73 were also nolle prosequied, however, that charge is not at issue here.
[6] Former LSA-R.S. 15:495 provided:

Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
[7] Former LSA-R.S. 15:557 provided:

No judgment shall be set aside, or a new trial granted by any appellate court of this state, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.
[8] The 1966 version of LSA-C.Cr.P. art. 921 provided:

A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.
[9] Prejudice to the substantial rights of the defendant was found in these cases upholding the per se rule. See Duke, 362 So.2d at 561; Hamilton, 356 So.2d at 1363.